Good morning, Your Honors. My name is Brian Newman and I represent Petitioner-Appellant Herman Willie Barlow. Your Honor, both the District Court and the Magistrate Judge have found that Mr. Barlow's trial counsel was ineffective in the preparation and presentation of his trial. So therefore, the findings must address whether the jury would have had a reasonable doubt respecting his guilt and that the reasonable probability is only a probability sufficient to undermine the confidence in the outcome of the trial. Counsel, before you proceed with that part of your argument, can you clarify for us as to what standard of review we have under AEDPA here? Yes, I think it's a de novo standard, Your Honor, as far as De novo with respect to the magistrate's Findings, and the court has to take into consideration, of course, the findings of fact as far as we then must also adopt whatever standard of review AEDPA imposes on them. Correct. Okay. And what standard does AEDPA impose on the District Court's ability to engage in further fact-finding and rummage through the record in the state court? Well, there has to be a presumption that the fact-finding of the state courts is presumptive, Your Honor, and I think that we can do that in this case. Under what circumstances can we expand the record that was before the state court? Well, I don't think we need to expand the record, Your Honor. The record was clearly in front of the state court previously. I think we don't need to go beyond the state record. The record is such, is with such clarity that the record with regard to the incompetence of trial counsel in his failure to prepare, to investigate, to interview the witnesses that he intended, that could have swung the balance of this trial to the probable guilty party was such that had that evidence come into play, that any reasonable juror would have had reasonable doubt, or at least as far as the outcome of the trial would have been suspect and there would have been a significant lack of confidence. And the way I put that, Your Honor, and without meaning to speak over, Your Honor, is that the trial judge was shocked. He was shocked and he stated in the court record, and he said it, what about DeVore? I'm not calling him, was the answer. Is he available? Yeah, he's available as far as I know. I'm not calling him. You're not calling him? No. What about these declarations against interest? I'm going to use them. How are you going to use them if you haven't established that he's unavailable? Because, well, maybe I'm not. I just assumed that I could use a declaration against penal interest. Well, I will let you read Witkin. I will take your word for it. And then he goes on, and later on the judge had given him a chance to do some research on third-party declarations over the lunch period. But he would have had to have brought in DeVore as a witness. Absolutely, Your Honor. And he explained to the magistrate judge that he was not willing to do that. He didn't want somebody else. He didn't try to do that. He said he didn't know how to do that. He didn't know that there was a process to writ him in, and he didn't know how he could do that. I thought that at one point he told the counsel said that he did not want someone else coming in and testifying that Barlow did it. No, Your Honor. He said he didn't. He didn't say that? I don't recall him saying that, Your Honor. His purpose was he did not know that he could bring Barlow in. I'm sorry, DeVore in. And he didn't. Although DeVore at that time was at the FCI in Phoenix, I tried to bring DeVore in, of course, at the hearing before the magistrate, in which case the magistrate appointed Mr. DeVore an attorney. Mr. DeVore indicated he was going to take the fifth. Therefore, that's all that trial counsel had to do to establish that Mr. DeVore would have been unavailable. Had he done that, then a string of witnesses that heard DeVore confess to killing the victim in this case, three individuals had heard Mr. DeVore confess to that. What did he say? He said in a number of instances. He told people. He told Brian Bridges. And the courtroom had some idea what. He told Brian Bridges to park the car, I just killed someone. Or I just killed him, I think was his words. He had. The quote I have here is I killed this guy, he's dead. I'm telling you, park the car, he's dead. Is that what you're saying? That's the accurate quote, Your Honor, yes. I was doing it by memory. And that was to Brian Bridges. And that would have brought out another declaration against interest that would have been admissible had he been declared unavailable. Counsel, I want to take you back to a question I asked you just a minute ago. I asked you whether, and this is Hauser who is the attorney, is that correct? That's correct, Your Honor. Whether Hauser said that he didn't want to call DeVore as a witness because he didn't want another person saying that Barlow was the murderer. And you said that he hadn't made any such statement. I'm referring to page 19 of the magistrate's findings. He testified he made no attempt to call DeVore as a witness at trial because he did not want, quote, another person, close quote, saying that Petitioner was the murderer. Now, why isn't that a strategic decision by counsel? Because I think prior to that, Your Honor, in his declaration. First of all, we do want to acknowledge that the magistrate did make that such a finding and your prior statement to me was incorrect. I think I told you, I stated that, Your Honor, I didn't recall him making that statement. But I don't want to mislead the Court. But the fact is, Your Honor, is that Hauser stated in his declaration that he signed to the attorney general that he did not know how to do that and he did not know how he could subpoena Mr. DeVore into court in order to do that. How he tried to salt and pepper and modify his once he came in and testified before the magistrate to make excuses, the fact is, is that once he had done that, there was a number of witnesses. There were three witnesses who heard him testify or heard him make statements that implicated him to the murder rather than Mr. Barlow. Second of all, would have pitted Mr. DeVore's record, which was horrendous. His criminal record was horrendous compared to that of Mr. Barlow. Mr. Barlow was virtually squeaky clean as far as any prior criminal contacts with law enforcement where Mr. DeVore had armed robberies, armed bank robbery. He was doing a big stretch for armed bank robbery at that time. He had a huge record of violent crime. He was a violent criminal. What was the experience of Barlow's counsel? At that time, I don't know. At the time of him testifying or appearing before the magistrate court, Your Honor, he was a certified specialist, which doesn't say much as far as being a certified specialist, Your Honor. And also, on a factual basis, with regard to Barbara Lawling, who did testify that Mr. DeVore forced her, she recanted her original statement that when she told the original, I think it was Detective Miller, that she had heard Barlow confess to the crime and that she had told him that Barlow said that he strangled him with a belt, which was, of course, inconsistent with the coroner's report. When she got on the witness stand, she stated that, you know, DeVore had told her to say all this stuff. That was a – there was a disconnect without the jury knowing what type of person DeVore was and that she – knowing the type of person DeVore was, that DeVore – that she was scared – could have been painted as being scared to death of Mr. DeVore, and that's why she made those statements. And at the time when she recanted, it gave some clarity as to why she recanted those statements. Let me ask. When you sought the attendance of DeVore at the evidentiary hearing and he invoked the Fifth Amendment, what, if anything, did you do to procure the attendance of Grimes, Shady, and the other witnesses who had heard these statements? Yes. I had an investigator go out, former law enforcement investigator. Of course, we're talking about almost ten years after the fact, Your Honor. We were able to find a couple of – I think a couple of the witnesses, but not – we could not find Brian Bridges. We could not find – who was Shady, of course. We could not find Barbara – no, we found Barbara Lawling. We could not find Maggie Muslin. So we found some witnesses. We found some other witnesses that were on the original witness list that really didn't tie in with what we were trying to establish. You never located this man, Brian Bridges, Shady? No. We couldn't locate him at ten years later, Your Honor. However, he did voluntarily make statements to law enforcement at the time of the original investigation. I can only presume that his location was up in Sunset. In those days, that's where he hung out. That's where he was – his usual place of abode was. He was a drug dealer. You know, all these people were drug dealers, Your Honor. I understand I have 20 seconds. I would like to reserve the 20 seconds, if necessary, Your Honor. All right. Thank you. Good morning, Your Honors. Deputy Attorney General Tomshin on behalf of Respondent. There's three things I'd like to discuss. One is the standard of review. Number two is the scope of the record. And number three is the ultimate question for this Court is whether there's a reasonable argument that supports the California Supreme Court's denial of habeas in this case. Hopefully I'll hit some of the points that Appellant brought up, but I think it's probably better to address it this way. First, as for the standard of review, the standard of review here is ADEPA, and the standard is 2254 D-1. And it's clear that in two cases decided after the district court reached its ruling in this case that the district court here did apply the correct standard. And those two cases are Coleman v. Pinholster and Ricker v. Harrington. It's not 24 G-2? It's 2254 D-1. D-1, not D-2? Right. It's D-1, Your Honor. Why isn't it D-2? It's D-1 because here we have an adjudication on the merits, and we have a State court's denial. And what Ricker and what Pinholster both say is that a summary denial, a State court's summary denial of a habeas petition is an adjudication on the merits which triggers review under 2254. A State court's what? A State court's adjudication, a State court's summary denial. I'm talking about the Supreme Court. The California Supreme Court. What did they do? They issued a summary denial. How is that an adjudication? That's an adjudication on the merits. They just issued a postcard with a no, a denied on it. Yes, that's correct, but. Is that an adjudication? Ricker v. Harrington. We don't know what they did. That's what they do routinely. They sent out these postcards, denied, denied, denied. So, I mean, they didn't make any findings. They don't cite any cases. They just say denied. So what kind of an adjudication is that? You get a better adjudication on the small claims court. It's a joke. Your Honor, I understand your point. I respectfully disagree with you that it is a joke. In Ricker v. Harrington, it's a. Is it from the Attorney General's office? That's correct, Your Honor. Yeah, well, you see, the state courts don't do their job here in these habeas cases. The way the system works. And there's no fixed responsibility. I don't need to go through all of that. But it's this business. See, what happens is the state judges don't do their job. Then it comes to the federal court. And so we have a whole cadre of magistrates and all kinds of other folks that help. We've got almost as many magistrates. We have district judges. So they go through and do all the work that the state court, the Supreme Court, should have done. But it falls on the federal courts. That's probably good for business. And it follows what Charles Dickens said, that the overarching principle of the English law is to always keep itself in business. So that helps us that way. But the state court doesn't. They just issue these denials. And then they come to the district court. And, you know, you take a place like the Central District, California, they probably get about 2,000, maybe 2,500 of these state habeas petitions a year. Do you know how many are granted? No, Your Honor. One or two. That's because the state court doesn't do its job. And they're their cases. I'm sorry. Counsel, let me ask you, what significance, if any, do you place on footnotes 10 and 11 of Part 2 of the Cullen v. Penholster opinion, footnote 10, though we need not decide where to draw the line between new claims and claims adjudicated on the merits, Justice Sotomayor's hypothetical involving new evidence of withheld exculpatory witnesses' statement? And it refers to the hypothetical that's on page 1410. Footnote 11 of the Cullen v. Penholster decision, the state does not contest that the alleged claim was adjudicated on the merits by the California Supreme Court, but it asserts that some of the evidence adduced in the federal evidentiary hearing fundamentally changed Penholster's claim so as to render it effectively unadjudicated. Now, I believe this is Part 2 of the opinion that was joined in by eight of the justices. Now, when you take those footnotes and then you read on page 16 of the magistrate's opinion in this case, the Court's review shows that the trial record contains no reference by Hauser to any confession by DeVore to Shady. Now, are those footnotes and this finding by the magistrate judge relevant to our inquiry today? Your Honor, I do think they are. I think the important thing about – I want to address Judge Pragerson's comments, but I'll answer your question first. I think what – if I understand your question correctly, I think what you're getting at is what is the scope of the record that's before the State court. And here, of course, we didn't have the chance to – Penholster decided after briefing we didn't have a chance to do that. And Penholster is very clear that the only relevant record is – or the only – in 2454, 2254d1, the relevant record that you can look at, the only one you can look at is the record before the State court that adjudicated the claimant of merits. And what that means is that evidence presented for the first time in a Federal evidentiary hearing cannot be considered in the 2254d1 question. And what that means here specifically is that there's three items of evidence. One of them, which your Honor referred to, which was the Bridges statement reporting DeVore's confession. That's one item of evidence that was not part of the State court record. Another – the other one – the other two critical pieces of evidence in the district court's ruling were number one, trial counsel's testimony at the evidentiary hearing, which again – which also wasn't part of the record before the State court. And number three, Maria Dulce's police statement. Basically, she's reporting the same thing that Bridges reports regarding an alleged confession by DeVore. All three of those items are not part of the State record. I do – I got the Bridges and Dulce. The third one I missed. What? Trial counsel's testimony at the – Hauser's testimony. Exactly, Your Honor. And I want to be very specific as to what was before the California Supreme Court. In the supplemental excerpts of record, volume one, at pages 116 to 273, that's the actual California State petition. And in particular, at pages 130 through 133 and 153 to 162, that's where Petitioner raised this third-party culpability evidence claim in the context of an ineffective assistance. Okay. So that leaves us with – that leaves us with sort of one big piece of evidence that was before the California Supreme Court, which is the question of DeVore. Yes, Your Honor. It leaves the Bridges – specifically, it's the Bridges statement. That was attached as a – But the DeVore – the DeVore statement, I killed the guy, parked the car, seems like an important statement. There's – that is before – that is – the Bridges statement was part of the State record. He did present it as an exhibit. He did refer to it in his California State petition. It is part of the record. That's – that should be considered. But the important thing here is the way that California – You said the Bridges statement? Not on DeVore. DeVore's statement – DeVore's statement is in the record. DeVore's statement – Is in the State record. Through Bridges' statement. Okay. All right. Tell us why – is this not an effective assistance of counsel? We can't consider – you're going to toss out Hauser's statement that there are strategic reasons for him to keep DeVore off the stand. So we no longer can consider that under your theory of the record. Unfortunately, that helps us, but we can't consider it. And the S2 – It doesn't help you. Trial counsel's testimony – he does give some strategic reasons. It does provide some – I guess it could either help or hurt us. But bottom line is it can't be considered. Your Honor, the record before the California Supreme Court. Your Honor, the record before the California Supreme Court is the habeas petition. And also, he attached – in relevant part here – It's the habeas petition. He also attached Bridges' police statement. It's not a whole trial record. It's just a habeas petition. It is the habeas petition. He also did attach the opinion. It's not – it – Penholster Footnote 12 basically summarizes California law. And as a general matter, it does state that California habeas courts will look at the trial record. What is kind of odd in the California system, when I was on the Superior Court for a few years, is that when it comes to habeas, you can file it right in the Supreme Court. You know, you're not required to file it with the trial court. That's correct. And then you get a ruling, and then it goes up to the Court of Appeals, and you get a ruling, and then it goes to California Supreme Court. It is boom. Now, that's very unusual, isn't it? When the – I never remember a petition just going straight – there's no appeal, you know, from the trial court to the intermediate appellate court to the Supreme Court. It doesn't work up that chain. No, Your Honor. Are there many cases where petitioners just file right with the California Supreme Court? Speaking from my experience of about 14 years, roughly half of them go either through – roughly half of them go directly to the Supreme Court. And I'm just – but, again, this is anecdotal. This is just my experience. It's not unusual, at least as far as my limited experience – my – the cases I've come across. With respect to DeBoer, then, is it the State's position that this was not an effective assistance of counsel, or that there's no prejudice? Your Honor, of course, I think the prejudice argument is much stronger, but I still believe that the – as to the former, it's wrong. Essentially, what we have here is Petitioner presented no admissible evidence. And what I want to discuss real briefly is, under California law, hearsay statements are not – are basically disregarded. Okay. Granting that, then why wasn't it ineffective assistance of counsel to fail to call DeBoer so that you could admit it under an exception? I think, as to the performance prong, basically, if you look at the exchange that was discussed earlier, it's two points. Number one is that it's – he's talking about actually admitting a statement of DeBoer through – that was made to Tom Grimes. And that wasn't – that actual statement wasn't presented in the California State Court. That actual statement never came in. It's not part of the trial record. It's not part of the California – it's referred to in the trial record, but it's not actually part of it. That might be making too fine a point. But the broader point is that Petitioner presented no evidence to support his claim. There's no declaration from trial counsel, so we don't know anything – we have no information from trial counsel.  as well. And in addition – Assuming it was ineffective assistance of counsel, why isn't it prejudicial? Two main reasons, Your Honor. Number one, again, is Petitioner's failure to demonstrate – DeBoer's burden of demonstrating prejudice. The district court's analysis is a lot more thorough than I could go through here. I know I'm over time. Basically, again, he didn't present – he didn't – again, we're only limited to Bridges' statement because under Pindell, sort of the other statements are out. But what I'm talking about is Bridges' police statement regarding divorce statement. And as to that, he didn't show that Bridges was available. He didn't show that Bridges would have testified in his behalf. And he didn't present – he didn't even cite any evidence code under which the Bridges' police statement would have come in. And the district court correctly noted that it was double hearsay. So those reasons. And an additional reason, too, again, is ultimately the most damning evidence of Petitioner's own recorded police statements in which he admitted that he had his fingers interlaced around the victim's neck, that he – and then he was basically on top of the victim and lifted up. And he told the police that he lifted the victim up with enough force to lift him off the ground. And the victim's cause of death here was a broken man's apple and strangulation. So that was the most – the strongest evidence. And, again – Was that recorded? I'm sorry, Your Honor? Was that recorded? That was – there was – there is a transcript of that. And I think – I'm almost positive that was played at trial, that confession. And the broader point here is under both the performance prong and prejudice prong of Strickland, Pinholster and Richter are very clear that it's a deferential standard view. In fact, it's doubly deferential. And basically, if there's any reasonable argument to support the California Supreme Court's decision, then Habeas relief is barred. But we're looking at the California Supreme Court's decision, right? That's correct. And we got nothing from them but one word, denied. So how do you defer to that? Again, Your Honor – We don't know what they did, do we? I understand, Your Honors – I understand – Usually they cite a case, don't they? They will cite a case if there's a procedural bar imposed. Generally, they will do that. But they didn't – there's no cite to anything. That's correct. But, again, Your Honor, I understand Your Honor's points you're making. But those issues were raised. Those issues were considered in Richter and Pinholster. And U.S. Supreme – that U.S. Supreme Court president binds this court, and the holdings in those courts is that a summary denial is an adjudication on the merits, which triggers 2254d1 review. So the bottom line is, no matter what reservations – respectfully, whatever reservations the court may have. The word denied, that's – the Supreme Court has said that's an adjudication on the merits. That's correct, Your Honor. Well, how can it be an adjudication on the merits when the magistrate judge's opinion, the court's review shows that the trial record contains no reference by Hauser to any confession by the court of shady? That – How could that be before the California State Supreme Court? I think that's a separate question. I think there's two questions. One is whether 2254d1 applies, and the second question is the scope of review. And I think the magistrate's – the point you're raising there is that evidence that the magistrate judge is talking about, that goes to the scope of the record. And basically, that's not – that's not part of the record before the California – I mean, before the California courts. At some point in this habeas petition, through amendment or refiling of an amended petition, item number 6, claim number 6 was omitted, which is ineffective assistance of counsel based on counsel's failure to pursue innocence defense based on theory that DeVore committed the crime. Wasn't that omitted from the claims adjudicated by the state court? Are you referring to the California state court petition? I know this California state court petition repeats claims 5 and 6. Or are you referring to the second amendment of the petition in this case? I suppose it's in the district court. Really, my question is, was this included in the petition before the California state supreme court? Bridges' statement? Yes. Bridges' statement, yes. That was – he did – he did include that – he did include Bridges' police statement as an exhibit to his California state petition, which was filed in the California supreme court. Do you have a copy of that California state petition? Yes. It is – again, that's at pages 116 through 273 of Respondent's excerpts of record. And page 274 is the one-page summary denial. And the one – if you're looking for the exact exhibit, that's pages 249 through 251, and that's Bridges' actual statement. Again, that's 249 through 251. I've got Bridges' actual statement. There's no problem there, but I'm just wondering what was actually before the California supreme court. Okay, Your Honor. And again, that's 116 through 273. That's the record before the California supreme court. Thank you. I just – I know I'm way over. I just wanted to, again, point – again, the point is – I'm not going to send you a postcard to deny it. Hopefully it's a postcard affirmance. But again, with this Court's indulgence, again, the test is – it's a doubly deferential test. And here, it's whether there's any reasonable argument that the Court – that could support the California supreme court's decision. And here, certainly the prejudice analysis, Petitioner's failure to demonstrate prejudice, is a reasonable argument supporting the California supreme court's petition. And for those reasons, I just urge this Court to affirm the District Court's denial of habeas. Thank you, Your Honors, and thank you for indulging me. Thank you. I might just have just a few seconds, Your Honor. Your Honor, a probable innocent man is in prison, possibly for the rest of his life. I think there can be no confidence in the conviction in this case based on the ineffective assistance of his attorney, trial counsel. I think the record is replete with the standard that Mr. Hauser, the defendant, acted upon, or lack of standards, I should say, his inability to call Mr. DeVore, which resulted in the inability to get in declarations against self-interest by three other individuals to testify to that, the inconsistencies of his statements that could have been brought in through cross-examination of law enforcement, the fact that Barbara Lawling's testimony when she recanted her original statements to the law enforcement, where she testified that Mr. Barlow had confessed to her, that she recanted that during the trial, would have given context to her recantation, that DeVore had ordered her to make the phone call, make the 911 call, and tell the police that Barlow had done that, that DeVore  had done that, that Barlow had done that, that DeVore had done that, that DeVore had done that, that Barbara Lawling had overheard that, that he had gone into the victim's house, that he had cleaned up, quote-unquote, cleaned up the location, that he had keys to the victim's house. All this would have been able to come out, would have corroborated the statements of Barbara Lawling, and Your Honor, I would ask that Your Honor reverse the conviction, and I would submit, Your Honor. Thank you. Thank you. This matter is submitted, and we'll now go to the second item.
judges: Davidson, Pregerson, Bybee